UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VALERIE DAHL, also known as Valerie E. Olson,<br><br>Defendant. | Case No. 08-CV-1050 (PJS/JJK)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Mary L. Trippler, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Valerie Dahl, pro se.

Defendant Valerie Dahl took out multiple student loans between 1975 and 1981. Those loans were guaranteed by the federal government, so when Dahl defaulted on them, the federal government paid off the original lenders and took over the loans. After trying for many years to persuade Dahl to repay her loans, the Department of Education brought this action to collect the balance due. The government now moves for summary judgment.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences

that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

Dahl does not dispute that she signed promissory notes for all the loans at issue in this case. Ans. ¶ 2 [Docket No. 3]; Dahl Dep. at 57.[1] Dahl also does not dispute that she has not repaid those loans. *See* Dahl Dep. at 26-27. Instead, Dahl contends that the government forgave the loans in return for her work as a teacher in Los Angeles, California from 1987 to 1993. Ans. ¶ 11; Dahl Dep. at 22-23, 32-34.

It is clear, however, that Dahl was not entitled, under the law, to forgiveness of her loans. Dahl took out loans under two federal programs: the Federally Insured Student Loan ("FISL") program, and the Perkins Loan program. Francisco Decl. ¶ 24 [Docket No. 23]. Dahl's FISL loans could not have been lawfully forgiven in return for Dahl's teaching because the FISL program never authorized the forgiveness of student loans in return for teaching. *Id.* ¶ 40. Dahl's Perkins loan also could not have been lawfully forgiven because the loan was in default and had been accelerated by October 1985. Francisco Decl. ¶ 35; Dahl Dep. at 56. Once a defaulted Perkins loan has been accelerated, it cannot be forgiven in return for teaching performed on or after the date of acceleration. 34 C.F.R. § 674.52(c)(2). Thus, Dahl's Perkins loan — which, again, had been accelerated in 1985 — could not have been forgiven for work that she did as a teacher beginning in 1987.

Dahl also contends that even if she was not entitled to loan forgiveness under the relevant laws and regulations, the government should be forbidden to collect on her loans because,

---

[1]The cited portions of Dahl's deposition are attached to the declaration of Mary Trippler [Docket No. 27].

whatever the law may have been, she was *told* by a government official that her loans would be forgiven. In lawyer's terms, Dahl asserts the defense of equitable estoppel. Dahl cannot prevail on this defense.[2]

As a general rule, a party who asserts the defense of equitable estoppel against a plaintiff must show three things: (1) that the plaintiff made a misrepresentation; (2) that the party asserting the equitable-estoppel defense reasonably relied on that misrepresentation; and (3) that the party asserting the defense suffered some harm as a result of relying on the misrepresentation. *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). When the plaintiff is the federal government, though, a party asserting the defense of equitable estoppel must show even more. *Id.* at 60 ("[I]t is well settled that the Government may not be estopped on the same terms as any other litigant."). Indeed, the Supreme Court has left open the possibility that equitable estoppel will *never* lie against the government. *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 423 (1990) ("We leave for another day whether an estoppel claim could ever succeed against the Government.") At the very least, to prevail on the defense of equitable

---

[2]The Eighth Circuit has said that "equitable estoppel depends on the facts of a case and is ordinarily a fact question for the jury to decide." *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1057 (8th Cir. 2006) (citing a case from Minnesota Supreme Court). In some jurisdictions, the defense of equitable estoppel is tried to the judge. *See, e.g.*, *Gaymon v. Richland Mem. Hosp.*, 488 S.E.2d 332, 333 (S.C. 1997) ("[A] defense of equitable estoppel interposed in a law case should be tried by the court as an equitable issue."); *see also Price v. Fox Entm't Group, Inc.*, No. 05 Civ. 5259 (SAS), 2007 U.S. Dist. LEXIS 37524, 2007 WL 1498321 (S.D.N.Y. May 22, 2007) (holding that the defense of estoppel in a copyright-infringement case is for the court and discussing cases).

In this case, whether Dahl's equitable-estoppel defense is for the Court or for the jury is ultimately of no moment. If the equitable-estoppel defense is for the Court, the Court finds that Dahl cannot prevail on the defense based on the undisputed facts. If the equitable-estoppel defense is for a jury, the Court finds that no reasonable jury could decide in Dahl's favor.

estoppel against the government, a party must show more than a simple misrepresentation by a government employee; the party must instead show that the government "engaged in affirmative misconduct." *Morgan v. Comm'r*, 345 F.3d 563, 566 (8th Cir. 2003).

According to Dahl, at some time after she began teaching in Los Angeles, an unidentified government employee told Dahl that her loans would be forgiven if she completed certain paperwork. Dahl Dep. at 33. Dahl says that she completed the paperwork and believed that her loans were forgiven. *Id.* at 33-34. Even if Dahl's version of these facts is accurate, however, she has not shown affirmative misconduct on the government's part. At most, Dahl has established that, on a single occasion, a bureaucrat gave her incorrect information over the phone. People make mistakes. If every mistake by a public employee gave rise to an equitable-estoppel defense, the defense's availability against the government would be the rule, not the exception.

Further, even if a government official had committed affirmative misconduct in promising to forgive Dahl's loans — and, again, there is no evidence that affirmative misconduct occurred — Dahl would still have to show that she reasonably relied on the official's misrepresentation. *See Cmty. Health Servs.*, 467 U.S. at 61. Dahl's reliance would have been reasonable only if she did not know, and should not have known, that the employee to whom she spoke gave her incorrect information. *See id.* at 59. Put another way, if Dahl could have discovered that she was not eligible for loan forgiveness through reasonable diligence and was negligent for failing to discover that truth, she cannot prevail on her estoppel defense. *See id.* at 59 n.10.

Dahl's reliance was unreasonable. If a government employee told Dahl that her loans would be forgiven in return for her teaching, that official was plainly mistaken about the law, as

explained above. "[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Id.* at 63. In particular, a person generally acts unreasonably in relying on a government official's oral statement that contradicts the law. *See id.* at 65 ("The appropriateness of respondent's reliance is further undermined because the advice it received . . . was oral.").

Dahl admits that she does not recall ever having received confirmation from the Department of Education that her loans were, in fact, forgiven. Dahl Dep. at 48. Further, Dahl had ample reason to know that her loans had *not* been forgiven. Debt collectors have been contacting Dahl about her unpaid loans for roughly twenty years. This should have suggested to Dahl that her loans had *not* been forgiven; yet she claims that she believed, based on her single, long-ago phone call with an unidentified bureaucrat, that her loans had been forgiven, and that all of the debt collectors were simply mistaken. *Id.* at 53-54. Dahl also admits that the Department of Education has regularly confiscated her tax refunds to pay her outstanding student loans. *Id.* at 51; *see also* Francisco Decl. at ¶¶ 38, 42. Although Dahl believes that her accountant complained to the Department of Education about the confiscation of her tax refunds, Dahl cannot remember speaking to the accountant about the results of this complaint. Dahl Dep. at 51-52, 56. Dahl herself apparently never contacted the Department of Education directly about the ongoing confiscation of her tax refunds. *Id.* at 56.

Given all of the evidence that Dahl's student loans had not been forgiven, she acted unreasonably in persisting in her belief — based on a single phone conversation — that her loans had been forgiven. And she acted unreasonably in failing to pick up the phone, call the Department of Education, and say: "I thought that my student loans had been forgiven, but, for

the past twenty years, debt collectors have been contacting me, and you've been confiscating my tax refunds. Could you clarify the status of my loans?"

Finally, even if the government committed affirmative misconduct (which it did not), and even if Dahl acted reasonably in relying on the incorrect information provided by a government employee (which she did not), Dahl did not suffer any detriment as a result of her reliance on the erroneous information. That is, Dahl did not change her position in reliance on the bureaucrat's alleged misrepresentation in such a way that it would be unjust to allow the government to collect on her loans. *See Cmty. Health Servs.*, 467 U.S. at 59 ("[T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse . . . .") (quotation marks omitted). In particular, Dahl did not take up teaching because of the promise of loan forgiveness. By Dahl's own admission, she had moved to Los Angeles and begun teaching *before* anyone told her that her loans would be forgiven as a result of that teaching. Dahl Dep. at 33.

Because Dahl cannot prevail on her equitable-estoppel defense, and because the government has established that Dahl owes the government the money that it seeks to recover, the Court grants summary judgment to the government. The amount of the judgment is based on the amounts due as of April 15, 2009 as set forth in paragraphs 26 through 34 of the affidavit of Alberto Francisco.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of plaintiff United States of America [Docket No. 19] is GRANTED.

2. Defendant Valerie Dahl must pay to plaintiff the United States of America:

    a. $25,346.45 (which equals $11,573.50 in principal, plus $87.00 in loan-related administrative fees, plus $13,685.95 in unpaid interest accrued through April 15, 2009);

    b. plus post-judgment interest as provided by 28 U.S.C. § 1961;

    c. plus $350.00 in costs as provided by 28 U.S.C. § 1920 and 28 U.S.C. § 2412.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 11, 2009                    s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge